IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15CR146 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEN D. MILES, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Carole S. Rendon, United States Attorney, and Carmen E. Henderson and Michael L. Collyer, Assistant United States Attorneys, and respectfully submit this memorandum setting forth the United States' position regarding the sentencing for Defendant Allen D. Miles.  For the reasons set forth below, and those to be articulated at the sentencing hearing, the United States respectfully submits that a sentence within the Guidelines range of 135 to 168 months' imprisonment plus two-years consecutive to the aggravated identity theft counts is appropriate in this case.

I.      **FACTUAL BACKGROUND**

In support of its sentencing position, the United States offers the below summary of Miles' relevant conduct.  The government also refers the Court to the description included in the

Presentence Investigation Report ("PSR"), (Docket #55 at ¶¶ 12-47), and the testimony offered at the trial held on March 28, 2016 and concluding on April 4, 2016.

From approximately March 2011, through July 2011, Miles, co-defendant Ve Sayavong and Zinara M. Highsmith (previously charged in a related case), and others, devised a scheme to defraud the Internal Revenue Service and others and obtained money by false and fraudulent representations. (Docket #55 at ¶ 2). The scheme involved the filing of false federal income tax returns in the names of low income persons ("claimants") that generated tax refunds split between the claimants and participants in the scheme. (*Id*. at ¶ 3). Specifically, in or around February 2011, Craig Cudhea solicited persons to refer clients to his tax preparation business. (*Id*. at ¶ 13). Through this solicitation, Cudhea was introduced to Miles. (*Id*.) Miles and Cudhea then began a business relationship wherein Miles recruited clients for Cudhea's income tax preparation business. (*Id*.) As part of this relationship, Miles recruited claimants and sent their personal identification information (PII) to Cudhea for the preparation of income tax returns. (*Id*.) In exchange, Cudhea provided Miles with $125 commission for each accepted filed tax return. (*Id*.) Miles recruited claimants by inducing other ministers or church leaders to solicit members of their congregation and others to apply for an alleged "Obama Stimulus Program." (*Id*. at ¶ 15, 29).

Initially, Miles gathered the PII of the claimants and sent it to Cudhea for the preparation of an income tax return. However, shortly after the relationship began, Cudhea was receiving so many referrals from Miles and other ministers that he could not file all of the income tax returns alone. Cudhea then enlisted the assistance of Zinara M. Highsmith and others to assist him with the preparation of the income tax returns. In or around March 2011, Miles began to work exclusively with Highsmith. (*Id*. at ¶ 32). As part of this relationship, Miles recruited claimants

2

and sent their PII to Highsmith for the preparation of income tax returns. (*Id*.) In exchange, Highsmith caused $125 of each accepted income tax return to be deposited into Miles' bank account. (*Id*.) When filing the income tax returns, false income amounts were used and several inappropriate credits were claimed resulting in the filing of fraudulent income tax returns. (*Id*. at ¶ 26). Despite this knowledge, Miles continued to recruit claimants and submit their PII for the filing of fraudulent income tax returns. As the result of Miles' conduct, approximately 2,750 fraudulent income tax returns were filed using the PII of claimants. (*Id*. at ¶ 46). The total amount of refunds claimed in those returns was approximately $4,845,458. (*Id*.) Due to the fraudulent claims, the IRS issued approximately $3,914,595.95 in fraudulent refunds. (*Id*.) Miles received more than $240,000 of this amount for his role in the scheme. (*Id*.)

## II.     APPLICABLE LEGAL STANDARDS

Familiar legal principles guide the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006), and thus remains an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted). The Court then considers the factors set forth in 18 U.S.C. § 3553(a).

## III.    SENTENCING GUIDELINES COMPUTATION

### A.     OFFENSE LEVEL

The United States has no objection to the calculations contained in the PSR. (Docket #55 at ¶¶ 52-64). The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1). (*Id.* at ¶ 54). The

3

offense level should be increased by an additional 18 levels because the intended loss amount of $4,845,458 is more than $3,500,000 but not more than $9,500,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(J).  (*Id*. at ¶ 55).  Additionally, a 2-level enhancement applies pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means.  Also, a 4-level enhancement applies pursuant to U.S.S.G. § 3B1.1(a) because Miles was an organizer and leader in the scheme.  Furthermore, a 2-level enhancement applies pursuant to U.S.S.G. § 3B1.3 because Miles abused his position of trust as a minister to induce claimants to provide their PII and to induce recruiters to work on his behalf.  Thus, Miles' resulting offense level is 33.  Moreover, due to his aggravated identify theft convictions in Counts 12-14, in violation of 18 U.S.C. § 1028A(a)(1), Miles must be sentenced to two years for each count which must be served consecutive to any sentence imposed on Counts 1-11.  Miles does not contest his base offense level, the 18-level increase due to loss amount, or the two-level enhancement for sophisticated means.  However, Miles argues that the other enhancements, including role and abuse of trust, applied by U.S. Pretrial Services & Probation should not apply.

    1.  <u>Aggravating Role</u>

 Miles argues that the aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(a) should not apply because he was not the organizer of the criminal activity herein or a leader, manager or supervisor of any other participants who bore criminal responsibility for the scheme.  As an initial matter, Miles was an organizer of the scheme to collect PII of the claimants under false and fraudulent pretenses.  As demonstrated through the trial testimony and exhibits, Miles was the creator of the alleged "Obama Stimulus Program."  Evidence at trial demonstrated that Miles sent solicitation emails to many individuals falsely alleging that there was an Obama Stimulus Program and requesting that they solicit referrals for the program.  As a result of these emails, Miles found recruiters who began to work under his direct control.  Miles provided these

4

recruiters with spreadsheets to collect the PII of claimants. Additionally, Miles directed these recruiters to ask claimants for "gifts" and told them that this was the only way they were permitted to make money off of the program. Miles also told the recruiters that they could not charge the claimants because he was the one paying taxes on the money obtained, but that he would take care of them. Also, the testimony demonstrated that Miles himself communicated with some claimants regarding the alleged program. Without Miles organizing this fraudulent manner to obtain the PII of claimants, the scheme could not operate as the PII was essential for the preparation of the fraudulent income tax returns.

Miles argues that the enhancement does not apply because he did not control the activity of any criminally responsible person. Miles is mistaken. The Guideline merely states that Miles must be an organizer of the scheme that involves five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). A participant is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1(a) application note 1. Miles was the organizer, leader, and manager of the ministers that recruited claimants on his behalf. While these individuals were not charged as part of the indictment, it is highly probable that some or all of them are criminally responsible for their conduct in the scheme. The evidence at trial suggested that at various points in the scheme many recruiters at the very least should have known that they were recruiting claimants as part of a scheme under fraudulent pretenses. A recruiter testified that claimants began to tell her that they called the IRS and learned that income tax returns were filed in their name and that $400 of the refund was directed to other accounts. With this information, the recruiter had knowledge or at the very least reason to know that she was participating in a scheme to defraud individuals under fraudulent representations. Furthermore, assuming each

5

of Miles' recruiters was not criminally responsible in the commission of the offense, the commentary specifies that "an upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1(a) application note 2. Miles exercised management responsibility over the activities of the criminal organization as he was responsible for gathering the PII which was essential to the filing of the fraudulent tax returns, as explained above. Thus, the 4-level enhancement for aggravating role does apply.

        2.        <u>Abuse of a Position of Trust</u>

Next, Miles argues that the 2-level abuse of a position of trust enhancement should not apply because for the enhancement to apply the person or entity with which the defendant held such a position must have been the victim and Miles did not hold a position of trust with the IRS. As demonstrated at trial, the IRS was not the only victim of Miles' scheme to defraud. Additionally, each of the claimants were also victims. At trial, the testimony displayed that some of the claimants discovered Miles was filing fraudulent tax returns when they attempted to file their income tax return and it was rejected because Miles had caused a return to previously be filed on their behalf. These individuals were possibly entitled to an income tax return of some amount that they were unable to claim. Additionally, Miles caused $400 from each return to be stolen from the claimants without their knowledge. Furthermore, the trial testimony demonstrated that some of the claimants received letters from the IRS to pay the money back and made payments on the amounts Miles caused them to owe back to the IRS as a result of the scheme. Thus, the claimants were victims of Miles' scheme. Miles used his position as a Reverend to induce the claimants to provide their PII which was an integral part

of the scheme. Miles' recruiters testified at trial that they believed Miles' assertion that there was an "Obama Stimulus Program" and recruited claimants because they trusted him since he was a minister. Additionally, some claimants that spoke directly to Miles testified at trial and stated that they provided him with their PII over the phone because they trusted him because he was a minister. Therefore, there is evidence that Miles' abused a position of trust and the enhancement does apply.

Accordingly, the total offense level is a 33.

B. CRIMINAL HISTORY CATEGORY

Miles falls into Criminal History Category I. (Docket #55 at ¶ 69).

C. GUIDELINES RANGE

Assuming the Court finds these calculations correct, the total offense level is 33, and Miles falls into Criminal History Category I. (Docket #55 at ¶ 116). The corresponding Guidelines range is 135-168 months. (*Id.* at ¶ 116.). Additionally, Counts 12-14, require a two-year term of imprisonment to be served consecutively to any other sentence imposed.

D. GROUNDS FOR DEPARTURE AND/OR VARIANCE

Title 18 U.S.C. § 1028A(b)(3) specifically provides that "in determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed, or used, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section." (*Id*.) This statute "clearly prohibits a sentencing court from taking into consideration § 1028A(a)(1)'s mandatory two-year term for aggravated identity theft to reduce the sentence that it would otherwise impose when sentencing a defendant for predicate offenses underlying the

7

aggravated identity theft conviction, i.e. the felony during which the means of identification was transferred, possessed or used." *United States v. Vidal-Reyes*, 562 F.3d 43, 50 (1st Cir. 2009) (internal quotations and citation omitted). Despite this clear prohibition, Miles requests that this Court take the prohibited action by granting a downward departure on his underlying wire fraud counts in consideration of the two-year mandatory minimum he must serve on his aggravated identity theft counts. Miles contends that the predicate offenses underlying his aggravated identity theft convictions were not charged in this case. Miles' assertion is disingenuous. Miles was convicted of Count 1 of the Indictment, which was conspiracy to commit wire fraud. That overall conspiracy count included the predicate wire fraud offense underlying his aggravated identity theft convictions. Count 1 of the Indictment along with the substantive wire fraud counts group together for guideline calculation purposes. Therefore, Miles' resulting guideline sentence is based on the predicate offense underlying his identity theft convictions. As a result, 18 U.S.C. § 1028A(b)(3) strictly prohibits this Court from taking Miles' 2-year mandatory minimum sentence for aggravated identity theft into consideration to reduce the sentence it otherwise would impose for his wire fraud counts.

## IV.     APPLICATION OF § 3553(A) FACTORS

### A.     NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of the offense counsel in favor of a sentence falling within the Guidelines range. Miles induced low income and disabled individuals to provide their PII through misrepresentations and used their PII to file fraudulent income tax returns without their knowledge. Additionally, Miles defrauded the IRS in an amount of over $3 million dollars by causing the fraudulent income tax returns to be filed. Miles also profited in an amount of over $240,000 by his efforts. Furthermore, Miles was warned several times that

he was conducting a fraud and he continued his conduct. Moreover, after the conduct concluded Miles demonstrated a desire to continue in the fraud the next tax year.

      B.      <u>HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

Miles' history and characteristics also support a sentence within the Guidelines range. While Miles does not have a prior criminal history, this fact is already taken into consideration in assigning his guideline range. Miles' history and characteristics make evident that he is not a man of meager means. Rather, he is a minister and the CEO of a non-profit organization. The Court is unable to determine the exact amounts of this means as he failed to provide the necessary financial information as directed by Pretrial Services. Nevertheless, it is clear that Miles' conduct was motivated by greed and opportunity rather than need.

      C.      <u>NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT, AND TO AFFORD ADEQUATE DETERRENCE</u>

A Guidelines range sentence also will adequately reflect the severity of the offense, promote respect for the law, and provide adequate deterrence for Miles and others contemplating similar crimes. The offense conduct and other relevant factors fall within the scope of circumstances contemplated by the Guidelines, and a Guideline sentence therefore is appropriate and will accomplish the goals of 18 U.S.C. § 3553(a).

      D.      <u>A GUIDELINE SENTENCE WILL BE PROPORTIONATE</u>.

Miles claims that a Guideline sentence will be disproportionately high as compared to his co-conspirators. (R. 57: Miles' Sentencing Memorandum, PageID 355-56). This argument is factually and legally deficient.

Miles' co-conspirators are factually distinguishable. As the trial evidence confirmed, Miles was the main driver of this scheme. It would not have existed without him providing all

of the PII to churn out false tax returns.  Highsmith and Sayavong were replaceable and Miles' scheme was in place before they entered the conspiracy and would have continued without them as Miles would have simply used someone else to handle that aspect of the conspiracy – the reverse is not true because it could not have worked without Miles.  And that's why he earned a higher role enhancement due to his recruitment of others to further the scheme.  The same is true for the other enhancement: Miles took full advantage of his status as a religious leader, which is why he abused a position of trust; neither Highsmith nor Sayavong occupied a position of trust with respect to anyone.

The disproportionality argument is also legally incorrect in two ways.  First, Miles seems to believe that the Aggravated Identity Theft counts render his sentence disproportionate because his co-conspirators do not have convictions for the same offense.  But Miles and Sayavong did not personally deceive the taxpayers into providing their PII and neglect to inform them that the conspirators were taking a portion of their "refunds."  Thus, Miles was more culpable with respect to the Aggravated Identity Theft involve the taxpayer PII.

Moreover, this argument is legally irrelevant as prosecutors have wide discretion to determine the charges for each defendant.  *United States v. Wymer*, 2016 U.S. App. LEXIS 12166, 62-63 n.10 (6th Cir. 2016) (rejecting claim that the co-defendants' sentences were disproportionately low because they were only charged in a conspiracy count with a 60-month statutory maximum while defendant Debolt also had substantive caps that provided for a higher sentence) (citations omitted).

The disproportionality argument itself is misplaced because that concept is inapplicable to co-defendant sentences.  "[Section] 3553(a)(6) 'is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal

10

conduct. It is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants.'" *United States v. Wymer*, 2016 U.S. App. LEXIS at *62-63 n.10 (citations omitted).

        Respectfully submitted,

        CAROLE S. RENDON
        United States Attorney

By:   /s/ Carmen E. Henderson
        Carmen E. Henderson (OH: 0089212)
        Michael L. Collyer (OH: 0061719)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3967/3744
        (216) 522-2403 (facsimile)
        Carmen.Henderson@usdoj.gov
        michael.collyer@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 14th day of August 2016 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

                /s/ Michael L. Collyer
                Michael L. Collyer
                Assistant U.S. Attorney